## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL LAWRENCE SALMON,

                       **Plaintiff,**                     **Case No. 25-2276-DDC-TJJ**

v.

MATT ALAN SELBY, et al.,

                       **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff Michael Lawrence Salmon has filed a Motion for Reconsideration (Doc. 30). He asks the court to reconsider its Memorandum and Order (Doc. 28), which adopted United States Magistrate Judge Teresa J. James's Report and Recommendation (Doc. 25) and dismissed plaintiff's case. Plaintiff asserts that he didn't have the opportunity to object to the Report and Recommendation because he didn't receive it in the mail. Doc. 30 at 1. He identifies two reasons this may have occurred: either the court neglected to change his address or "mail obfuscation" at Franklin County Detention Center impeded his communication with the court. *Id.* at 1–2.

Plaintiff's reconsideration motion never presents any other argument for the court to revisit its earlier Order. It contends only that plaintiff didn't have the chance to object. That's a problem for plaintiff, for three reasons. *First*, it's plaintiff's burden to ensure that the court has an accurate mailing address in each of his individual cases. The onus rests on plaintiff to inform the court of any address change—and to do so in a clear notice filed specifically in *this* case. *Second*, plaintiff's reconsideration motion doesn't present any argument that would permit the

court to revisit its earlier ruling under the governing standard.  That is, plaintiff offers no substantive argument to counteract Magistrate Judge James's recommended disposition.  And, *finally*, any such substantive argument would prove futile, anyway, given the deficiencies Judge James identified in his Amended Complaint.  The court explains these conclusions, below, starting with the background facts.

## I.    Background

Plaintiff's Amended Complaint asserts claims arising from a contempt order and capias warrant[1] issued by the Stone County, Missouri Circuit Court.  Doc. 7 at 2–4 (Am. Compl. ¶¶ 10–29).  It explains that, on April 28, 2025, the Stone County court ordered plaintiff to remove videos of judicial proceedings that plaintiff had posted on online platforms.  *Id.* at 2 (Am. Compl. ¶ 11).  Documents that plaintiff attached to his Amended Complaint provide helpful background. *Id.* at 6–8.  In those documents, the Stone County Circuit Court explained that paternity actions—like the underlying action in plaintiff's Stone County case—are confidential under Missouri law.  *Id.* at 7 (citing Mo. Rev. Stat. § 210.846).  And the state court noted that it hadn't authorized or permitted plaintiff to record the underlying paternity proceedings.  *Id.*  But plaintiff recorded the proceedings nonetheless—later publishing at least some of them online.  *Id.*  So, the court ordered plaintiff to take them down.  Despite actual knowledge of the state court's video-removal order, plaintiff refused to comply.  *Id.*  In fact, the court explained, plaintiff posted "additional videos of confidential court proceedings" *after* the court's video-removal order.  *Id.*

---

[1]      A capias warrant is synonymous with a bench warrant.  *See* Patrick. C. Brayer, *The Warrant Impact Study: Evaluating the Effects of Bench Warrants on Individuals and Communities*, 29 Berkeley J. Crim. L. 162, 167 (2024) ("The tool universally used by courts to enforce attendance at judicial proceedings and compliance with judicial orders is commonly referred to as a 'bench warrant.' Depending on the jurisdiction, these powerful instruments are also known as capias warrants, writs of arrest, and noncompliance warrants." (footnote omitted)).

The state court convened a contempt hearing on May 9, 2025, which plaintiff didn't attend. *Id.* at 8; *id.* at 2 (Am. Compl. ¶ 12). Plaintiff alleges he couldn't attend because he resides in Kansas and thus was unable to attend the Missouri hearing in person. *Id.* at 2 (Am. Compl. ¶ 12). And he alleges that his WebEx access was "unilaterally cancelled" two days before the hearing, eliminating his ability to appear remotely. *Id.* The court proceeded with the hearing in abstenia. *Id.* at 2–3 (Am. Compl. ¶ 13). Then, on May 22, 2025, the court issued a contempt order and capias warrant, citing plaintiff's noncompliance with the video-removal order and failure to appear at the contempt hearing. *Id.*

Plaintiff's Amended Complaint asks the court to enjoin enforcement of the contempt order and capias warrant and declare them unconstitutional. *Id.* at 4 (Am. Compl. ¶¶ 28–29). It also asks the court to find that the contempt hearing—conducted in absentia—violated his due process rights. *Id.* at 3–4 (Am. Compl. ¶¶ 23–24). Finally, it asks the court to find that the video-removal order—and contempt enforcement that followed—"constitute unlawful prior restraint and retaliation against Plaintiff's constitutionally protected speech." *Id.* at 4 (Am. Compl. ¶ 26).

Alongside his original Complaint, plaintiff filed a Motion for Leave to Proceed In Forma Pauperis. Doc 2. Magistrate Judge James thus screened plaintiff's Amended Complaint under 28 U.S.C. § 1915(e). Doc. 25. She recommended that the court dismiss plaintiff's Amended Complaint under *Rooker-Feldman*, Eleventh Amendment immunity, and failure to state a claim. *Id.* at 5–8. She also found the District of Kansas an improper venue, but recommended dismissal instead of transfer. *Id.* at 4–5. And she informed plaintiff of his opportunity to object and notified him that failure to object timely would preclude appellate review. *Id.* at 9. When plaintiff didn't object timely, the court adopted Magistrate Judge James's Report and

Recommendation and dismissed plaintiff's case. Doc. 28. A couple of weeks later, plaintiff filed a Motion for Reconsideration. Doc. 30.

The court denies the motion. It was plaintiff's burden to inform the court of his address change in *this* case. His motion doesn't satisfy the governing standard for reconsideration motions. Finally, any objection would prove futile. The court takes up each reason, in turn, beginning with plaintiff's change of address.

## II.    Change-of-Address Issue

The docket reflects that Magistrate Judge James issued her Report and Recommendation on July 22, 2025. Doc. 25. It was mailed to plaintiff by regular mail the same day. *Id.* A month later, on August 21, 2025, court staff entered a note on the docket. The note reported that the Kansas City clerk's office had received correspondence from plaintiff—addressed to the "U.S. Court of Appeals"—that indicated he was in custody at Franklin County Jail. According to the note, court staff returned the correspondence to plaintiff, along with a change-of-address form and instructions to complete and return the form. Shortly thereafter, on September 2, 2025, plaintiff submitted a Notice of Change of Address (Doc. 27). The docket reflects that court staff changed plaintiff's address the same day. The court issued its Memorandum and Order (Doc. 28) adopting Magistrate Judge James's recommended dismissal on October 9, 2025.

Plaintiff filed his Motion for Reconsideration on October 22, 2025. Doc. 30. In it, he asserts that the court knew about his changed address, for two reasons: *One*, plaintiff explains, he communicated with the court through letters—which he presumably mailed from his new address. Plaintiff asserts that he "wrote several letters to the clerks, notifying them of his current wrongful detention at Franklin County." *Id.* at 1. And he explains that he "exchanged over 20 letters with [the court] from June 2025 to October 2025," which, he contends, "establish[ed]

4

pattern residence." *Id.* at 1 (quotations cleaned up). According to plaintiff, "five months of consistent conversation" should have informed the court of his address change. *Id.* at 2. *Two*, plaintiff contends that he notified the court about his changed address in other cases pending in the District of Kansas. Plaintiff explains that he notified the United States District Court of Kansas in Topeka of his address change. *Id.* at 1. He also asserts that he "opened new lawsuits from Franklin County Detention with the U.S. District Court of Kansas." *Id.* (quotation cleaned up). Finally, plaintiff submitted a Letter to the Clerk (Doc. 31) and an attachment which, he contends, serves as proof the court knew his address. The attachment includes a notice of deficiency from another of plaintiff's cases in our court—styled *Salmon v. Braun*, 25-cv-03148-JWL. Doc. 31 at 2. The court mailed the *Braun* notice to plaintiff's new Franklin County address. *Id.*

In sum, plaintiff believes that the court knew his address had changed because of his informal communications with the court arriving from his new address and because the court utilized plaintiff's new address in his other cases in our District.

Our local rules require that each "attorney or pro se party must notify the clerk of any change of address or telephone number." D. Kan. Rule 5.1(b)(3). The onus thus rested on plaintiff to notify the court of his change of address—formally—in each individual case. Informal communication from plaintiff's new address doesn't suffice. The court can't process all informal communications it receives as potential change-of-address notices. Efforts are made, to be sure—such as when the court here received plaintiff's August 21, 2025, correspondence and returned it with a change-of-address form and instructions. But a party can't assume that the court will process an informal communication—one which, for example, complains of plaintiff's allegedly wrongful detention—as a change-of-address notification.

5

Neither does it suffice for plaintiff to file subsequent cases using his new address or change his address in a different case. Such measures don't inform the court of plaintiff's address change in *this* case. *See Theede v. U.S. Dep't of Labor*, 172 F.3d 1262, 1267 (10th Cir. 1999) (explaining that "[s]ubtle changes of address, buried in . . . papers filed with the court cannot suffice" to notify the court of address change). It's not the court's job to transfer address changes independently from one case to another. There's simply too many cases with too many parties for the sua sponte oversight plaintiff's motion contemplates. *See id.* ("It would be unreasonable to require courts to wade through a party's file in order to determine the most recent or most likely address at which to contact the party."). Instead, an attorney or pro se party must notify the court of the change separately for each individual action. Failure to notify the court clearly—and in each individual action—results in situations like the one plaintiff faces here.

Setting aside plaintiff's failure to notify the court, his reconsideration motion also doesn't meet the standard required for the court to grant it.

### III.    Motion to Reconsider Standard

"A motion to reconsider must be based on: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice." D. Kan. Rule 7.3. That is, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Courts are leery to grants motions to reconsider[,]" and "movants must shoulder . . . a substantial burden to succeed on a motion to reconsider." *Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 2017 WL 86190, at *5 (D. Kan. Jan. 10, 2017). A district court has discretion when deciding whether to grant or deny a motion to reconsider. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

6

Here, plaintiff's motion never contends that the court misapprehended the facts of the case, his position, or the controlling law.  Instead, plaintiff simply argues that he didn't get a chance to object.  Doc. 30 at 2.  But, as the court already has explained, that failure to object lands at plaintiff's feet—not the court's.  And such an argument doesn't satisfy any of the possible bases for a reconsideration motion.

Consider an analogous attempt to object untimely to a report and recommendation.  In *Apodaca v. Corizon Health Care*, the district court refused to excuse the untimeliness of the plaintiff's objections to a magistrate judge's Report and Recommendation—and the Tenth Circuit affirmed.  752 F. App'x 551, 553 (10th Cir. 2018).  The district court in *Apodaca* concluded that excusing untimeliness wouldn't provide any "meaningful benefit" because the plaintiff's objections "failed to identify specific errors in the magistrate judge's Report and Recommendation." *Id.*  "Objections to the magistrate's report must be specific enough to focus the district court's attention on the factual and legal issues in dispute." *Adargo v. U.S. Parole Comm'n*, 26 F. App'x 795, 797 (10th Cir. 2001).

The same lack-of-meaningful-benefit reasoning applies here.  Magistrate Judge James's Report and Recommendation (Doc. 25) included a litany of reasons for dismissal—*Rooker-Feldman*, Eleventh Amendment immunity, and failure to state a claim.  Nothing in plaintiff's reconsideration motion addresses any of the specific issues Judge James identified.  And where a party doesn't offer any specific objections, the court needn't revisit the issues de novo. *Garcia v. City of Albuquerque*, 232 F.3d 760, 766–67 (10th Cir. 2000) (explaining under Fed. R. Civ. P. 72(b) a district court must make a de novo determination only for those portions of the report and recommendation to which a party specifically has objected).

7

## IV.    Futile Objection

Finally, any objection plaintiff could muster would prove futile anyway.  Take his claims against Stone County, Missouri Circuit Judge Matt Selby, for instance.  Doc. 7 at 2.  Judge James found such claims barred by the Eleventh Amendment.  Doc. 25 at 7; *see also Kirchner v. Marshall*, 2023 WL 110953, at *3 (D. Colo. Jan. 5, 2023) ("Courts have repeatedly held that, under the Eleventh Amendment, state courts and state court judges are immune from claims asserted against them.").  And none of the three exceptions inhere in this case.  *See Frank v. Lee*, 84 F.4th 1119, 1130–31 (10th Cir. 2023) (explaining three exceptions to Eleventh Amendment immunity:  state consent, Congressional abrogation, and *Ex parte Young*).  *For one thing*, nothing indicates that Missouri has consented to this suit.  *See Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth*., 577 F.3d 1255, 1258 (10th Cir. 2009) ("Generally, we will find a waiver [of Eleventh Amendment immunity] either if the State voluntarily invokes our jurisdiction, or else if the State makes a clear declaration that it intends to submit itself to our jurisdiction." (quotation cleaned up)).  *Also*, Congress hasn't abrogated Missouri's immunity. *See Huddleston v. Colorado*, 2015 WL 9459721, at *2 (D. Colo. Dec. 28, 2015) ("Congress did not abrogate Eleventh Amendment immunity through § 1983[.]").  And, *last*, the Supreme Court has held that the narrow *Ex parte Young* exception "does not normally permit federal courts to issue injunctions against state-court judges[.]" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021).  "If a state court errs in its rulings . . . the traditional remedy has been some form of appeal[.]" *Id.*  Indeed, "'an injunction against a state court' or its 'machinery' 'would be a violation of the whole scheme of our Government.'" *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 163 (1908)).  With Eleventh Amendment immunity intact, no objection by plaintiff would change its bar to his claims.

8

Nor could an objection cure plaintiff's failure to state a claim against defendants Stone County, Missouri, and the Stone County, Missouri sheriff. *See* Doc. 25 at 7–8. As Judge James identified, plaintiff here "fails to allege any facts regarding what each defendant did, or when they did it. The Defendants' names do not once appear in the Complaint outside of listing the parties, and there are no facts pled specifically regarding any of the Defendants." Doc. 25 at 8. According to the Tenth Circuit, "complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). In light of that complexity, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*[.]" *Id.* at 1250 (emphasis in original). The Amended Complaint here neglects to allege clearly the who, what, or whom. Such pleading deficiencies merit dismissal, particularly in the § 1983 context.

In sum, plaintiff didn't notify the court about his address change in *this* case in a timely fashion. So, his failure to receive mail at his new address doesn't require the court to reconsider its earlier ruling. What's more, plaintiff's motion didn't identify any substantive basis for reconsideration. And even if it had, it would've proved futile because plaintiff's claims merit dismissal. So, the court denies his motion.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Michael Lawrence Salmon's Motion for Reconsideration (Doc. 30) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of August, 2026, at Kansas City, Kansas.**

        **s/ Daniel D. Crabtree**      
        **Daniel D. Crabtree**
        **United States District Judge**

9